UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MILLARD D. STEGALL,<br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>        Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 1:21-CV-123-JPK<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 25]. Plaintiff Millard Stegall requests that the Court reverse the October 28, 2020 decision of the Administrative Law Judge (ALJ) denying his claims for disability benefits, and remand to the agency for further proceedings. For the following reasons, the Court grants Plaintiff's request.

**PROCEDURAL BACKGROUND**

On January 28, 2019, Plaintiff applied for disability benefits and supplemental security income, alleging disability beginning September 1, 2018. Plaintiff's applications were denied initially and on reconsideration. He requested a hearing, which was held before an Administrative Law Judge (ALJ) on October 7, 2020. On October 28, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

    2.    The claimant has not engaged in substantial gainful activity since September 1, 2018, the alleged onset date.

---

[1] These findings correspond to the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

3. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and degenerative disc disease of the lumbar spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional limitations. He can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. He could occasionally balance, climb ramps and stairs, and stoop; and never crouch, crawl, kneel, and climb ladders, ropes or scaffolds. Furthermore, he should have no exposure to unprotected heights, moving mechanical parts and other potential workplace hazards. He is capable of work involving no concentrated exposure to pulmonary irritants, such as fumes, gasses, dust, odors and poor ventilation. Additionally, he is capable of unskilled work - i.e. jobs described by the Dictionary of Occupational Titles (DOT) as having a specific vocational preparation (SVP) of 2 or less and requiring no more than a general educational level (GED) reasoning level of 2. Specifically jobs that can be learned in 30 days or less which require the ability to (1) apply common sense understanding to carry out detailed but uninvolved written or oral instructions; (2) the ability to deal with problems involving a few concrete variables in or from standardized situations; and (3) the ability to handle few workplace changes. Furthermore, the claimant is capable of work involving interaction with supervisors, occasional or incidental interaction with co-workers, and no interaction with public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was [. . .] 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has a limited education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2018, through the date of this decision.

(AR 22-35)[2].

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v.*

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

*Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate the analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that he suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative

4

answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges he is disabled because of his depression, anxiety, and post-traumatic stress disorder (*see* AR 71-76), and complications from a back injury he sustained in 2005 when he fell through a ceiling at work (*see* AR 63). Although independent disability examiner Xavier Laurente had opined that Plaintiff was unable to stand and/or walk for two hours in an eight-hour workday (AR 525), which would foreclose even sedentary work, the ALJ found his opinion only "partially persuasive," stating that Dr. Laurente's findings on that issue were inconsistent with the medical evidence. (AR 31-32). The ALJ ultimately found that Plaintiff could do sedentary work with some additional limitations.

Plaintiff now challenges the ALJ's ruling, arguing that the ALJ wrongly interpreted medical imaging results without an expert opinion, erred in interpreting the medical opinion evidence, and failed to justify the absence of further mental limitations in the RFC. The Court remands based on the ALJ's failure to submit Plaintiff's October 14, 2019 lumbar MRI scan for expert review, for the reasons described below, and therefore does not address the remaining arguments.

**I.      October 14, 2019 MRI**

Generally, an ALJ must seek an expert's opinion to interpret new and "potentially decisive" medical evidence. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where the ALJ failed to seek a medical opinion on a back MRI). However, not every piece of evidence is

potentially decisive; "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (holding that a claimant's two updated spinal MRIs were not potentially decisive). The question is whether "the new information 'changed the picture so much that the ALJ erred by . . . evaluating himself the significance of [the new] report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

In this case, a physician assistant summarized[3] the results of Plaintiff's MRI as follows: "We reviewed his MRI scan. 10/14/2019 from the Imaging center. He does have disc degeneration at L5-S1 with disc desiccation. Minor disc bulges noted with central protrusion. L3-4 and L4-L5 show mild shortening of the pedicles and this appears to be developmental." (AR 701). The ALJ did not directly acknowledge this summary, but cited contemporaneous medical notes in concluding that "the allegations regarding the severity of [Plaintiff's] symptoms are inconsistent with the medical evidence." (AR 30).

This case is somewhat unusual in that (1) the MRI summary is not an original imaging result, but rather a summary dictated by another clinician; (2) it appears that no doctor who offered a medical opinion reviewed *any* imaging of Plaintiff's back, including the disputed MRI summary; (3) Plaintiff offers little argument as to why these particular findings constitute "potentially decisive" evidence; and (4) the ALJ did not mention the MRI summary in the decision. Neither party has produced a case that compels affirmance or remand under these circumstances, and the

---

[3] The original MRI results do not appear in the record, and neither the ALJ's decision nor the parties' briefs explain their absence. The summary is ambiguous, since it is unclear whether the finding of "[m]inor disc bulges" is an elaboration of the "disc degeneration at L5-S1 with disc desiccation," or describes a separate problem. However, this ambiguity does not affect the Court's analysis, and the Commissioner does not argue that the Court should analyze this summary differently from original imaging results.

Court's research has not revealed one. Nonetheless, for the reasons described below, the Court finds that remand is appropriate.

The Commissioner argues that the ALJ did not "interpret" the disputed summary, and instead determined Plaintiff's RFC based on contemporaneous medical evidence, Plaintiff's own allegations, and the evidence regarding his daily activities. Def. Mem. 5-7. It is true that the ALJ did not draw any explicit conclusions from the specific findings of "mild shortening of the pedicles" and "disc degeneration at L5-S1." That distinguishes this from cases cited by Plaintiff in which the ALJ "played doctor" by directly interpreting complex medical evidence. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (remanding where ALJ "compared the MRI results with earlier medical records" to assess the claimant's status at a particular time); *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) ("The ALJ stated that the MRI results were 'consistent' with Akin's impairments."). Further, Plaintiff makes no attempt to explain *why* this MRI summary could be potentially decisive, that is, why these "mild" and "minor" findings are inconsistent with sedentary work, other than the fact that they arise from "complex imaging." *See* Pl. Br. 8-10.

Moreover, the failure to mention the MRI summary was not necessarily error[4], because "an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)). At the same time, the ALJ must not "ignor[e] an entire line of evidence that supports a finding of disability." *Id.* (quoting *Jones v. Astrue*, 623 F.3d 1155,

---

[4] However, some courts remanding on this issue have cited the ALJ's lack of substantive discussion of the imaging results as further justification for remand. *See, e.g., Donna M. J. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00556-MGG, 2022 WL 594144, at *6 (N.D. Ind. Feb. 28, 2022) (remanding where the ALJ "did not explain why the [new] x-ray and MRI are consistent with the evidentiary record. For example, the ALJ did not compare or contrast the x-ray and MRI to prior medical findings.").

7

1162 (7th Cir. 2010)). Therefore, regardless of whether the ALJ "interpreted" or was even aware[5] of the MRI summary, remand is required if it was part of a "line of evidence" of disability that the ALJ did not address.

In finding that Plaintiff's "allegations regarding the severity of his symptoms [were] inconsistent with the objective medical evidence," the ALJ summarized the medical evidence about Plaintiff's injured back:

> [I]maging confirmed degenerative changes in the claimant's lumbar spine in June 2015. [Plaintiff] also reported lower back pain in July and December 2018. However, in December 2018, examination of his lumbar spine was within normal limits including no tenderness, normal ranges of motion, gait and sensation. Furthermore, in April 2019, he reported that his back pain improved with medication and his physical examination continued to be within normal limits. Nevertheless, I note that in May 2019 through September 2019, the claimant began to report lumbar pain that radiated to his right lower extremity. However, though examining sources observed reduced ranges of motion of his lumbar spine, they also noted that he had a normal posture, normal straight leg raise test, normal sensation, and full strength in his extremities with the exception of his bilateral hips. Nonetheless, I note that by 2020, the claimant reported lower back that radiated to his bilateral legs. His examination also showed reduced ranges of motion in his lumbar spine and ambulation in a slightly forward flexed position, albeit good strength in his lower extremities and normal straight leg raise test. He also received a spinal cord stimulator in June 2020 due to his persistent pain. Therefore, taking into consideration the claimant's history of back and lower extremity symptoms, I find that this supports the exertional, postural, and environmental limitations above.

(AR 30 (record citations omitted)). In short, Plaintiff's initial complaints of back pain seemed to be resolved, or at least controlled, by April 2019. However, in May 2019, Plaintiff began to complain of renewed pain, which led to the October 2019 MRI. (*See* AR 704-705 (noting on September 24, 2019: "[Plaintiff] continues to have low back pain . . . Patient has failed to improve with conservative measures including physical therapy . . . I recommended an MRI scan.")). At

---

[5] Given that the ALJ repeatedly cited to the record of the appointment at which the MRI was discussed (*see* AR 30, 32 citing AR 700-705), the ALJ may not have noticed the MRI summary, because it was essentially hidden within one of the treatment notes (*see* AR 701).

Plaintiff's next appointment, the nurse practitioner gave the MRI summary described above, and suggested steroid injections. (AR 701). The injections were not successful, and in June 2020 Plaintiff had a spinal cord stimulator[6] surgically implanted. (AR 882). This negative trend since May 2019 was consistent with Plaintiff's own allegations. (*See*, *e.g.*, AR 69 (Plaintiff indicated at the October 7, 2020 hearing that until the previous year, he could have walked "as far as [he] wanted to")).

In support of the conclusion that Plaintiff could do sedentary work, the ALJ cited records from Plaintiff's recent medical appointments demonstrating "normal posture, normal straight leg raise test, normal sensation, and full strength in his extremities with the exception of his bilateral hips." (AR 30 citing AR 635 (July 20, 2019), AR 686-694 (July 22, 2019), AR 700-705 (September 24, 2019), AR 868 (October 8, 2019)). Plaintiff had alleged he could only walk for half a block (AR 69), and this aspect of the ALJ's analysis was consistent with SSR 16-3p, which requires the ALJ to compare Plaintiff's allegations with the objective medical evidence. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) at *5 ("For example, an individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result. If no muscle wasting were present, we might not, depending on the other evidence in the record, find the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms.").

---

[6] "Spinal cord stimulation has become a widely used and efficient alternative for the management of refractory chronic pain that is unresponsive to conservative therapies . . . Low-level electrical impulses, delivered directly into the spinal cord through the [spinal cord stimulator] that is inserted in the epidural space, interfere with the direct transmission of pain signals traveling along the spinal cord to the brain." *Spinal Cord Stimulation in Pain Management: A Review*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3389317/ (last accessed September 21, 2022).

However, absent from the ALJ's discussion of Plaintiff's back treatment since May 2019 was any analysis of Plaintiff's pain. At the hearing, Plaintiff alleged he had constant back pain ranging from 5 to 8 out of 10 (AR 64), which required him to change positions roughly every 10 minutes (AR 55-56). Even if Plaintiff had normal strength, posture, and sensation on examination, he could also be experiencing pain that would compromise the ALJ's findings that he could sit for six hours in an eight-hour workday and stand or walk for two hours in an eight-hour workday (AR 28). *See Manns v. Comm'r of Soc. Sec.*, No. 3:20-CV-01040-SLC, 2022 WL 950630, at *7 (N.D. Ind. Mar. 30, 2022) ("The ALJ's observations about Manns's strength [] and sensation . . . are not necessarily inconsistent with disabling chronic pain."); *Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("Rollins's chief complaint is pain, *not* muscle weakness; the ALJ has not pointed to, nor does a review of the record reveal, a medical opinion that articulates an individual's muscle strength must be diminished if he is suffering from chronic pain.") (emphasis in original).

The ALJ did not mention that at many of the same appointments that revealed normal strength, posture, and sensation, Plaintiff was still complaining of pain. (*See* AR 686-694 (physical therapy records cited for "normal" findings also show constant pain of 5-6 out of 10 (AR 686, 689), reaching as high as 8 out of 10 (AR 690, 692); AR 700 ("good" strength but pain of 7 out of 10 exaggerated by repeated activity or sitting for long periods)). The ALJ did acknowledge the spinal cord stimulator implanted in June 2020 "due to [Plaintiff's] persistent pain" (AR 30), but made no finding or citation that the treatment was successful in relieving his pain, and Plaintiff's October 7, 2020 testimony about his pain suggested that it did not. (*See* AR 55-56, 64-66).

Further, the ALJ rejected Dr. Laurente's opinion that Plaintiff could not stand or walk for two hours in an eight-hour workday (AR 31-32 citing AR 519-525). That opinion was issued in

May 2020, roughly one month before Plaintiff's spinal cord stimulator was inserted. Here again, the ALJ rejected the opinion based on findings of normal range of motion, gait, strength, and sensation on examination (*see* AR 31-32); there was no explicit consideration of pain. The ALJ seemed to conclude, without clear explanation, that Plaintiff's daily activities and normal examination findings were sufficient evidence that he was not in the kind of pain that would preclude sedentary work.

In short, the ALJ's evaluation of Plaintiff's recent pain was incomplete, and it is in this context that the Court assesses whether the "ALJ erred by . . . evaluating himself the significance of [the MRI summary], or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen*, 844 F. App'x at 887. There are cases in which "mild" or "minor" imaging results have cut against a finding that those results were potentially decisive and required expert review. But those cases have typically involved updates of prior results already analyzed in the record[7], the absence of any medical opinion that would support a finding of disability[8], or conservative treatment indicating that doctors believed the problem was not disabling[9]. None of those situations apply here.

---

[7] *See, e.g., Christopher C. v. Kijakazi*, No. 1:20-CV-01933-TAB-JRS, 2021 WL 4771360, at *5 (S.D. Ind. Oct. 13, 2021) ("[W]hen comparing Plaintiff's May 2017 MRI to his November 2018 MRI . . . there is no basis to conclude that the state agency medical consultants' findings were outdated or that their conclusions would have changed if they had reviewed the 2018 MRI."); *Halverson v. Saul*, No. 20-CV-577-WMC, 2021 WL 1927530, at *3 (W.D. Wis. May 13, 2021) ("[T]he newer 2017 MRI does not appear to be significant or potentially decisive, especially given that both state agency doctors had the opportunity to review the 2015 MRI, and the only difference between the March 2015 and October 2017 MRIs identified by Dr. Brown was the "slightly worsened" disc at C6-7."); *Sauer v. Saul*, No. 19-C-927, 2020 WL 3397406, at *14 (E.D. Wis. June 19, 2020) ("It is debatable whether this MRI constitutes 'new and potentially decisive medical evidence' requiring remand. The agency doctors reviewed plaintiff's previous MRIs documenting her lumbar spine condition, and plaintiff develops no argument that the August 2016 scan documents a new condition or otherwise reveals a significant worsening of her previous condition.") (citations omitted).

[8] *See, e.g., Keys*, 679 F. App'x at 481 ("Keys did not explain how the [mild] findings on those reports undermine the uncontroverted opinions of Drs. Brill and Sands.").

[9] *See, e.g., Randall R. L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-141-MGG, 2021 WL 717529, at *5 (N.D. Ind. Feb. 23, 2021) ("The fact that the treatment providers continued to conservatively treat Plaintiff following the review of the 2017 x-ray . . . supports the Commissioner's conclusion that the 2017 x-ray findings were not potentially decisive medical evidence."); *Nicholas G. v. Saul*, No. 17 C 8607, 2019 WL 4059048, at *6 (N.D. Ill. Aug. 28, 2019) ("Again,

The Seventh Circuit's decision in *Kemplen* is instructive, although not strictly analogous to this case. In *Kemplen*, the state agency doctors initially found that the claimant could do certain kinds of light work, but her condition deteriorated after their review. X-rays and MRIs were ordered, and the claimant's doctor's notes indicated the results were "compatible with" neck and back pain caused by "mild degenerative spondylosis of the cervical and lumbar spine." 844 Fed. App'x at 885. Although the Seventh Circuit Court of Appeals labeled it a "close question," the court ordered remand for expert consideration of the medical evidence, based partly on the ALJ's inadequate explanation for Plaintiff's exertional limitations in the RFC. *Id*. at 887. This case is similar to *Kemplen* in that objective medical evidence suggests the claimant's condition was worsening, and the ALJ made apparent error (in this case, with the pain analysis) that created further uncertainty as to whether the imaging results were potentially decisive. *See id*. at 887-88. This is in fact a clearer case than *Kemplen*, because here there was a medical opinion supporting disability – and no medical opinion supporting the ALJ's conclusion that Plaintiff could do sedentary work. *Cf. id*. at 884-85 (the state agency opinion that the claimant could work was "the only medical opinion in the case").

The Court therefore remands, consistent with the case law suggesting that most often, ALJs (and courts) are simply not qualified to independently determine whether medical imaging is potentially decisive. *See*, *e.g.*, *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *9 (N.D. Ill. May 14, 2021) ("Admittedly, phrases like 'mild degenerative disc disease' . . . do not sound earth shattering to the lay ear. However, that lackluster language did not stop Dr. Lim, a trained

---

the radiograph showed mild findings and coincided with minimal findings on examination and minimal treatment recommendations . . . [T]he June 2012 radiograph – while new – was not potentially decisive and would not reasonably have changed the agency consultant's opinion.").

physician specializing in orthopedics, from concluding that Annette had chronic spine pain . . . It was therefore an error for the ALJ to interpret those records without the aid of a medical expert.")[10]

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 25] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 21st day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

---

[10] *See also Donna M. J. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00556-MGG, 2022 WL 594144, at *6 (N.D. Ind. Feb. 28, 2022) ("[T]he Court cannot decipher whether the [imaging] is so inconsequential that further expert evaluation would be rendered superfluous, or not."); *Eric N. v. Saul*, No. 1:20CV93, 2021 WL 822809, at *9 (N.D. Ind. Mar. 4, 2021) ("[T]he ALJ unilaterally concluded that being informed of the aforementioned evidence would have no effect on the reviewing physicians' previous opinion of Plaintiff's ability to perform light work. Clearly, such a conclusion is an improper medical judgment by the ALJ."); *Dohner v. Saul*, No. 1:18-CV-251-HAB, 2019 WL 6888450, at *4 (N.D. Ind. Dec. 18, 2019) ("Simply put, this Court cannot conclude that the Decision is supported by substantial evidence when evidence as key as the 2016 MRI has not been subjected to any medical opinion . . . The MRI may very well be consistent with the state agency physician's findings, but that determination must be made by a medical expert, not the ALJ or this Court.").